## IN THE COURT OF APPEALS OF IOWA

No. 18-1148
Filed September 26, 2018

**IN THE INTEREST OF M.W., M.C., T.C., D.C., G.C., and A.C.,**
**Minor Children,**

**C.S., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Deborah Farmer Minot, District Associate Judge.

A mother appeals a juvenile court order terminating her parental rights to three of six children and concluding the State made reasonable efforts to reunify the family. **AFFIRMED.**

Rachel C.B. Antonuccio of Public Defender's Office, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A mother, Carrie, appeals a juvenile court order involving her six children—ages one, two, three, six, seven and nine years. The order terminated her parental relationship with the three youngest children and rejected her reasonable-efforts challenge regarding all six children. On appeal, Carrie claims the State did not make a satisfactory effort to reunify the family because social workers suspended her visitation with the children. She contends the State did not present clear and convincing evidence termination was warranted under Iowa Code subsections 232.116(1)(d) and (h) (2018). And she argues the juvenile court should have decided against termination because of her strong bond with the children. *See* Iowa Code § 232.116(3)(c). After considering Carrie's claims in light of the entire record, we concur with the juvenile court's meticulous and well-reasoned termination order.[1]

### I.    Facts and Prior Proceedings

Carrie had her oldest child, M.W., in 2008, two years after graduating from high school. She separated from the child's father, Murray, a few months after giving birth. Joe is the father of the other five children. Neither father is a party to this appeal. In 2009, Joe and Carrie moved into a trailer, which remained Carrie's residence throughout this case. The Iowa Department of Human Services (DHS)

---

[1] We review termination-of-parental-rights proceedings de novo, which means examining both the facts and law and adjudicating anew those issues preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is key to the outcome. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must offer clear and convincing proof, which means we have no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

intervened with this family in 2015 and 2016 due to the children's unsanitary and unsafe living conditions.

In February 2017, Michelle Schuerer, the Family Safety, Risk, and Permanency (FSRP) worker, started providing services to the family. She noted the filthy condition of the home, including "bugs crawling on the floor," open trash bags, dirty diapers, mice feces, and holes in the wall exposing wiring near the bathtub. Schuerer recalled: "Carrie was there with five children at the time . . . . And the children just kind of seemed to be running round doing whatever they desired." Schuerer also reported the parents left power tools within reach of the children. The family did not have enough beds for all the children. The children reported being hungry and anxious about food. The parents had not been bathing the children because the tub had a hole in it. The children also had unmet medical and dental needs.

Although Joe and Carrie started home improvement projects, they never really eliminated the clutter, bug and mice infestations, sewage backups, and other hazards.[2] In early summer 2017, the child protection services of the DHS found a denial of critical care for lack of proper supervision of the children. When Schuerer found the household "more chaotic than normal" a few days later, Carrie said she could not do much to calm the situation due to her pregnancy. Carrie also told the FSRP worker she did not trust Joe to care for the children on his own because of his mental-health condition. Carrie's youngest, A.C., was born in June 2017.

---

[2] In addition to Joe and Carrie, two other adults were staying in the trailer. Carrie was not successful in evicting them until late December 2017.

In July the State filed a petition alleging five children were children in need of assistance (CINA) due to the unsafe conditions in the home. In October 2017, Carrie stipulated to the CINA adjudication. The juvenile court issued an order for temporary removal, based in part on allegations from M.W. that Joe "is mean to her and threatens to throw her out the door" and the only time he is nice to her is when he is tickling her upper thigh area.

In November and December 2017, FSRP worker Schuerer supervised twelve visits between the parents and the six children. The juvenile court accurately described their interactions as "ongoing chaos." Carrie was so overwhelmed and unengaged, the children sometimes asked to end the visits early. After one visit, Carrie's seven-year-old son, M.C., poignantly explained why he was happy to go back to his foster home: they "keep me clean, eat dinner with me, and read me bedtime stories." The children also reported having seen Joe place his hands around Carrie's neck. In late December, Carrie obtained a domestic abuse protective order prohibiting Joe from contacting her.

In a January 2018 review order, the juvenile court expressed its disappointment with the parents' lack of progress since removal. The court discovered from the FSRP reports "the neglect in the home was even more severe than was previously assessed." The court observed: "each of the children suffered developmental and/or educational delays in the family home, some of which were severe, as evidenced by the progress that they have made since removal." The court also expressed concern about the negative impact on the children resulting from their visits with Carrie.

In late January, seven-year-old T.C. disclosed "some concerning things he had seen on the computer with his father." This disclosure prompted another abuse assessment by DHS child protection workers. T.C.'s interview at the Child Protection Center suggested the children were exposed to inappropriate sexual contact and explicit materials.[3]

In February 2018, Carrie filed a motion for reasonable efforts, asserting the DHS had recently informed her it was cancelling her visitation with all of the children because of a child abuse investigation but did not divulge the nature of the allegations. That same month, the police executed a search warrant and seized a computer from her home.[4] Police also found Joe hiding in a closet.

In March, Carrie updated the reasonable-efforts motion, denying any inappropriate contact between her and T.C. (or any of the children) and asserting she was in

> an extremely difficult position, because the forensic examination of the items seized by search warrant will not be complete for nine to twelve months. Permanency for the younger three children is set for March 19, 2018, and permanency for the older three will likely be set in October of 2018, far before the forensic examination is completed.

The court decided visitation should remain suspended pending an evidentiary hearing. The DHS restarted Carrie's visits with the youngest child, A.C., in April. Later that month, the State filed petitions to terminate parental rights with respect to D.C., G.C., and A.C., all of whom were under four years of age.

---

[3] For example, the children had access to Carrie's cell phone during visitations. In a later search of Carrie's phone, a police detective found naked photos of Carrie and videos of her masturbating intermingled with photos of the children. Carrie admitted posting the explicit photos to an internet dating site.

[4] On February 2, the police received a tip from a neighbor who had seen Joe tossing a laptop computer out the window. The neighbor retrieved the laptop and turned it over to authorities.

The evidentiary hearing on Carrie's reasonable-efforts motion occurred in early May, combined with the permanency and termination-of-parental-rights hearing for the three youngest children. Carrie testified she experienced depression and anxiety her whole life. She acknowledged that in early 2018 her "mental state wasn't at the best" but asserted, "I'm not the same person I was six months ago. I'm not even the same person who I was two months ago." As evidence of her progress, Carrie cited her new part-time job and a more effective medication regime. She also said she had taken on the project of cleaning and renovating her home but acknowledged it was not yet complete. Carrie told the court she had a bond with each of the six children and her goal was to "continue to work on the trailer and get things back in order, to get all six kids home."

In June, the juvenile court rejected Carrie's reasonable-efforts motion and terminated her parental relationship with D.C., G.C., and A.C under Iowa Code section 232.116(1)(h).[5] Carrie appeals both aspects of the ruling.

## II.    Analysis

### A.    Reasonable Efforts

Carrie argues the DHS "failed to properly manage" the CINA cases and did not meet its reasonable-efforts obligation. As her principal complaint, she points to the suspension of her visitation with all of the children following T.C.'s concerning statements.

The code requires the DHS to exert every reasonable effort to return children to their home—consistent with their best interests. Iowa Code

---

[5] The juvenile court clarified in an August 6, 2018 order nunc pro tunc that it was terminating the mother's rights under paragraph (h) only.

§ 232.102(6)(b). "Reasonable efforts" include services offered to eliminate the need for removal or to make it possible for the children to safely return to the family home. *Id.* The duty to make reasonable efforts is not "a strict substantive requirement of termination," but the extent of the measures taken by the DHS "impacts the burden of proving those elements of termination which require reunification efforts." *C.B.*, 611 N.W.2d at 493. The concept of reasonable efforts often focuses on visitation designed to enable reunification while protecting the children from the harm triggering removal. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) (explaining visitation "cannot be considered in a vacuum" because it is only one element in a comprehensive approach to returning the children home).

The juvenile court determined "[s]uspension of visits was necessary for the protection of the children, both because of the new allegations and because of the distress the children were suffering during visits." We agree. In finding the DHS made reasonable reunification efforts, the court also offered this accurate assessment of Carrie's stalled momentum:

> Visitation was provided twice per week from October 2017 through February 9, 2018. Carrie's visits were never increased solely due to her lack of progress. She did not take full advantage of the school's invitation to attend lunches with the older children. She did not call the children. She was never able to transport the children due to not having adequate seating and child restraints in her vehicle. She was never able to have visitation in the family home due to her failure to make it safe and habitable. She was never able to meet visit expectations during supervised visits.

Like the juvenile court, we find the DHS fulfilled its statutory duty to offer a reasonable array of services aimed at moving the family toward reunification. Carrie is not entitled to relief on this claim.

**B.     Termination of Parental Rights**

The juvenile court ended Carrie's parental relationship with the three youngest children based on Iowa Code section 232.116(1)(h).    Under that subsection, the State must prove:

>          (1) The child is three years of age or younger.
>          (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>          (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty day.
>          (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h); *see In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (identifying relevant time in fourth element as date of termination hearing).

On appeal, Carrie claims the children could be returned to her care at the present time.   The record belies that claim.   Carrie admitted at the hearing she needed more time to work on her parenting skills.   She was still "working on" basic offerings like providing better hygiene and nutrition for the young children.   And Carrie had not completed the necessary renovations to the trailer so that it could be habitable for the family.

Carrie alternatively contends the juvenile court should have granted her "an extension of time" because of the bond she shared with the children.   Carrie conflates two disparate notions here—the ability of a juvenile court to delay permanency under Iowa Code section 232.104(2)(b) if the need for removal will no longer exist at the end of an additional six-month period and the option of the juvenile court not to terminate parental rights under section 232.116(3)(c) if "[t]here

is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Neither concept requires reversal of the juvenile court here. Carrie has not demonstrated the sustained progress that would warrant a delay in permanency. And the record reveals no clear and convincing evidence the termination will be detrimental to the children due to their close bond with Carrie. *See* Iowa Code § 232.116(3)(c). The children are adoptable and have formed strong, trusting bonds with their caregivers. Termination of Carrie's parental rights was proper.

**AFFIRMED.**